MAYOR AND COUNCIL OF HOBOKEN, PLAINTIFF v. PATRICK R. GRIFFIN ET AL., DEFENDANTS.

Argued February 23, 1922—Decided March 31, 1922.

1. A plaintiff, in a proper case, may have the right to have his case before a foreign jury. Such jurisdiction should be exercised with great caution and only in aid of justice.

2. Precedents authorize a foreign jury when a fair and impartial, or at least a satisfactory, trial cannot be had in the county where the action is laid.

On rule to show cause.

Before Justices SWAYZE, BLACK and KATZENBACH.

For the rule, *John D. Pierson.*

Opposed, *Merritt Lane.*

The opinion of the court was delivered by

SWAYZE, J.   This is a rule to show cause why an order should not be made for the trial of the issue by a foreign jury.   It is an unusual application because the suit is a civil suit, and the question raised by the plaintiffs could have been presented either by the plaintiffs themselves by laying the venue in another county, or by a motion on the part of the defendants to change the venue.   Although the present procedure is unusual, it is distinctly provided for by our statute.

In *Pat. L.*, p. 259, the act relative to juries and verdicts, by its first section provides that every venire *facias* for the trial of any action or suit, civil or criminal, in any court, shall be awarded to the body of the proper county in which such suit is triable except where a foreign jury shall be deemed necessary, and then the venire shall be awarded to the body of the county from which said foreign jury is desired to come; on page 393 in the act relative to the Supreme Court and the Circuit Courts by section V, it is enacted that the Supreme Court may order trials by foreign juries in all cases where it shall be proper or necessary. These sections were recognized by Judge Paterson as part of the law as it had previously existed in England and as such were re-enacted.   That he was right in so thinking can be seen by the opinion of Lord Mansfield in *Rex* v. *Cowle,* 2 *Burr.* 834.   The statutory provision as it appears in Paterson has come down to us through all the revisions and compilations.   It is now found in sections 36, 37 and 38 of the act concerning juries.   It is made applicable to Circuit Courts

by the act of 1884 (*Pamph. L., p.* 123). *Comp. Stat., p.*
2977. It is necessary to observe the difference in the language
between the section providing for a foreign jury in criminal
cases and the section providing for a foreign jury in civil
cases, whether in the Supreme Court or the Circuit Court.
In criminal cases the Supreme Court can order a foreign
jury only when in their opinion a fair and impartial trial
cannot be had before the jury of the county, while both
Supreme Court and Circuit Courts are authorized in their
discretion to order trials by foreign juries in all cases, the
Supreme Court in all cases which have been commenced in
that court or may be removed to that court from any other
court, and the Circuit Courts in cases that may have been
commenced in any of those courts.

The difference between the statute in civil cases and the
statute in criminal cases is notable even though in practice
a restriction may be recognized by the Supreme Court upon
its discretionary power in civil cases. The court had a like
discretionary power as to change of venue in civil cases which
might accomplish the same end so far at any rate as the de-
fendant is concerned as an order for a foreign jury.

The eminent lawyers who revised the Practice act in 1874
recognized that there were still cases where a foreign jury
might be necessary. They inserted in the Practice act, in the
revision, section 231, a new section authorizing a procedure
for a change of venue. *Rev.* 1877, *p.* 884, but retained the
provision for foreign juries. The legislature extended the
power to Circuit Courts by the act of 1884, so important did
it seem. The continuance from the time of Paterson's Laws
through the Revision of 1820, pages 310, 453; the Revised
Statutes of 1847 (pages 196, 198 and 965), and the Revision
of 1877 (530), of the difference in the statutes between a
foreign jury in a civil and in a criminal case, is a clear in-
dication that it was more than verbal difference. Had that
been so the revisers, in 1877, when they brought section 36
and 37 together would have made a single section of them,
and the legislature would not have subsequently extended
the power to Circuit Courts.

We are clear therefore that the plaintiff has the right in a proper case to a foreign jury and there have been recent precedents in this state. We are, therefore, under no necessity of discussing the question on fundamental principles and we refer to *Crocker* v. *Justices of Superior Court*, 94 *N. E. Rep.* 369, only for the purpose of calling attention to the admirable discussion of the subject, in the absence of a statute like ours, by Chief Justice Rugg, of Massachusetts. We agree with him, that it is a jurisdiction to be exercised with great caution and only after a solid foundation of fact has been first established, and that it should be resorted to only in aid of justice and should not be permitted to be employed as an instrument of destruction or as a means of delay. We also agree that it should only be used when the court is convinced that a satisfactory trial cannot be had in the county where the venue would normally be laid. At common law the rule as stated in Tidd. Pr. authorizes a foreign jury when a fair and impartial, *or at least a satisfactory trial* cannot be had in the county where the action is laid. *Tidd Pr.* 723. It may well be that it was meant to save the right of the court in its discretion to order a foreign jury where a satisfactory trial could not be had, even when it could not be proved that there was difficulty in securing a fair and impartial trial. Ordinarily where it could be proved that a fair and impartial trial could not be otherwise had, justice would require a foreign jury; but it may well be, under our modern system of government and politics, that the same difficulty arising out of the influence of powerful men would arise as arose at common law. Then the powerful men were men of high rank and great power. Now they may be politicians who control votes and thereby control the source of governmental power. A trial under such circumstances may be very unsatisfactory to the court even though there could be no proof affecting the fairness and impartiality of the jury at the time when the venue is laid or even when the jury is empaneled. It is the probability of untoward influence that justifies precautions by the court and they may be justified even though there is no ground for challenging the array. Public clamor or political

prejudice may be cause enough.  Our experience with the actual results of efforts by the legislature to improve the character of juries admonish us of the difficulties in the way and it can make no difference in principle whether these difficulties are caused by the barons of the middle ages or a boss of the twentieth century, if there is the same danger of improper influence.  We are satisfied in this case, from the character of the case itself and from the interest evinced in it by men of political importance, that a satisfactory trial cannot be had in the county of Hudson.  No doubt it is theoretically possible to select a satisfactory jury from the county of Hudson, for we suppose that the average fairness and intelligence of men does not differ in different counties, and it would be absurd to say that among the six hundred and odd thousand citizens of Hudson county a fair and impartial jury could not be empaneled.  But, we have to deal not with what might conceivably happen but what, as men are constituted, would probably happen.  This action is an action brought under the special order of the court permitting taxpayers of Hoboken—next to Jersey City the most populous city in Hudson county—to bring suit against the city commissioners, the governing body of the city, to recover city moneys alleged to have been spent improperly for the purpose of securing, or assisting in securing, the re-election of the commissioners. That there is probable cause to warrant the fear of untoward influence in Hudson county is sufficiently clear from the fact that the charge is supported by evidence taken under the authority of a legislative committee and submitted by that committee to the judge of the Hudson County Oyer and Terminer as their public duty, followed by inaction of grand juries. Both sides on the record are pecuniarily interested in the result, the matter is of public interest, and of a character that affects the rulers of a large city, and the interest of the municipality itself as a body corporate appears to be in fact at one with the interest of the office holders in control of that government, the present defendants, although the real interest on the part of the plaintiffs is in the citizens who have taken up the prosecution of the case.  The personal interest of the

commissioners is obvious, as they are called upon to reimburse the city for money improperly spent and their reputations are involved. Although the affidavits presented to us are largely based upon hearsay and cannot well be regarded as proof, there is sufficient evidence in the affidavits to show a very lively interest in favor of the defendants on the part of men of political importance. On a motion addressed to our discretion it would be foolish to close our eyes to these facts; they present substantially the same sort of a case as the cases which gave rise to the exercise of the power to order a foreign jury at common law and led the Supreme Court of Massachusetts to decide that it possessed that power even in the absence of an express statute. Lord Mansfield, in *Rex* v. *Cowle*, 2 *Burr.* 834, 862, refers to *Rex* v. *Lewis,* in 12 *Geo.* 1, where suspicion only properly verified by affidavit was held a sufficient reason for removing an indictment from a very high court. The whole page of the report in Burrows deserves study.

We think, therefore, that a satisfactory trial is not likely to be had in the county of Hudson. The case is within Tidd's express words. It would be unsatisfactory to the real plaintiff if they lose as they would feel that they had not received justice; and it would be at the same time unsatisfactory to the defendants who would feel that a verdict in their favor could hardly be regarded by the public as carrying the weight which it otherwise would. The language of the books as to a satisfactory trial is not mere idle words. We will therefore make an order for a jury from Bergen county. At common law it was necessary to suggest upon the record the reason for ordering a foreign jury. A form is found in *Tidd Forms* (*8th Eng. ed.*) 236. In this case the suggestion must be that a satisfactory trial cannot be had in the county of Hudson where the venue is laid.